TEAMSTERS LOCAL UNION #11 AFFILIATED WITH THE INTERNATIONAL BROTHERHOOD OF TEAMSTERS, CHAUFFEURS, WAREHOUSEMEN AND HELPERS OF AMERICA, AN UNINCORPORATED ASSOCIATION, AND FRANK DODGE, JR., PLAINTIFFS-RESPONDENTS, v. GEORGE ABAD AND ABCD TRUST. PARTNERS T/A GENERAL GROCERY WAREHOUSE CO., AND GENERAL GROCERY WAREHOUSE CO., DEFENDANTS-APPELLANTS.

Superior Court of New Jersey
Appellate Division

Argued September 20, 1976—Decided October 5, 1976.

Before Judges BISCHOFF, MORGAN and COLLESTER.

*Mr. Edward J. Gilhooly* argued the cause for appellants (*Messrs. Yauch, Peterpaul & Clark,* attorneys).

*Mr. Scott E. Tanne* argued the cause for respondents (*Messrs. Schneider, Cohen & Solomon,* attorneys).

PER CURIAM. Defendants appeal from a judgment which (1) set aside an arbitration award that sustained the discharge of plaintiff Dodge by his employer, defendants herein, and (2) ordered that Dodge be reinstated to his employment.

The procedural history and relevant facts are detailed in the opinion of the trial court reported at 135 *N. J. Super.* 552 and will not be restated.

Plaintiff's complaint and order to show cause, in which he sought an order vacating the award of the arbitrators, was supported by an affidavit of Salvatore Trimboli, who testified on behalf of the defendants at the arbitration hearing. This affidavit reads:

1. I reside at 22 Brandywine Road, Fords, New Jersey 08863.

2. Beginning September, 1969 until January 24, 1975, I was the warehouse manager for the defendant company General Grocery Warehouse Co. I was in charge of all shifts of employees and everyone at the warehouse, including all foremen and employees were under my general supervision.

3. I am fully familiar with all the facts relating to the discharge by the employer of Frank Dodge, Jr. I was a principal witness for the employer at the arbitration hearing concerning the discharge of Mr. Dodge.

4. At the beginning of August, 1974, Mr. George Abad, a principal in the company told me, "we have to start building a case against Frank Dodge. He is making too many waves for the company and nothing more than a troublemaker. We have to find reasons to fire him."

5. As a result of that directive, I started to gather data from the production record of Frank Dodge and found that about half of the daily production sheets were missing. I ignored that they were missing and drew conclusions from those records which were available. Therefore, when I testified concerning the production level to be attributed to Frank Dodge, I did not have a complete set of records upon which I could rely and when I stated that his production was below the records attributable to other employees I did so based upon incomplete records and because I was under pressure from Mr. Abad to find any possible basis I could to sustain the discharge of Mr. Dodge. At the hearing I produced a chart which indicated the production records for several employees including Frank Dodge for a period of several months. This was introduced as authorized as a continuing record when, in fact, as indicated above a number of the records were missing although the chart did not show that.

Defendants' motion for dismissal of plaintiff's complaint was supported by an affidavit of George Abad in which he categorically denied making the statement ascribed to him in paragraph 4 of the affidavit of Trimboli. Defendants also filed an affidavit of John Wade, the nightshift supervisor while Dodge was employed, in which affidavit Wade stated he was one of the witnesses who testified at the arbitration hear-

ing on behalf of defendants, that he testified as to Dodge's absenteeism, tardiness and insubordination, and that the discharge of Dodge was based on "absences, tardiness, poor attitude and poor performance."

The trial judge, in entering the judgment for plaintiff vacating the award of the arbitrators, found that there was a conscious withholding of a portion of the employer's production records by defendants. Such a conclusion is not warranted on this record. There is nothing before us to suggest that Abad knew there was a withholding of records. The Trimboli affidavit indicates that he gathered the production records and that he discovered them to be incomplete. Nothing suggests that Trimboli conveyed this information to Abad or to anyone else in the company. Therefore, the failure of Abad to deny the assertion concerning incomplete records does not, standing alone, justify an inference unfavorable to defendant. Moreover, even if the records were incomplete, it is not clear that defendants wilfully caused them to be so.

The circumstances surrounding the production of Trimboli's affidavit are such as to cast doubt upon its reliability. Trimboli did not come forward with this information until four months after the arbitration hearing and until after he had been discharged from his employment with defendants and had a motive for injuring his former employer.

The affidavit of Trimboli, in effect, constitutes recanting testimony with all its inherent unreliability. *State v. Carter,* 136 *N. J. Super.* 271 (Cty. Ct. 1974), rev'd on other grounds 69 *N. J.* 420 (1976).

We conclude that it was error for the trial judge to enter judgment for plaintiff without a plenary hearing. The affidavits submitted by the parties project conflicting factual assertions from which contradictory inferences and conclusions may be drawn. A full hearing is required wherein the testimony of the witnesses will be subjected to the searching inquiry of cross-examination. *R.* 4:67–5.

Reversed and remanded for a plenary hearing.